IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSE ANTONIO TREJO TREJO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. EP-25-CV-401-KC |
| | § | |
| WARDEN OF THE ERO EL PASO | § | |
| EAST MONTANA et al., | § | |
| | § | |
| Respondents. | § | |

## ORDER

On this day, the Court considered Petitioner Jose Antonio Trejo Trejo's Petition for Writ of Habeas Corpus, ECF No. 1. For the following reasons, the Petition is **GRANTED IN PART**.

## I.  BACKGROUND

This case involves Trejo's challenge to Respondents' decision to re-detain him without a bond hearing after he had been granted deferral of removal under the Convention Against Torture ("DCAT") and released pursuant to an Order of Supervision for nearly six and a half years. The following facts are derived from the allegations in the Petition and documentary evidence submitted by the parties.

### A.  First Arrival in the United States and Subsequent Removal

Trejo is a native and citizen of El Salvador. Pet. ¶ 16. He first attempted to enter the United States in 1996 with a fraudulent passport but withdrew his application for admission and returned to El Salvador. Resp. Ex. 1, Decl. Alejandro I. Garcia ("Garcia Decl.") 2 ¶ 1, ECF No. 3-1. At some point thereafter, Trejo entered the United States. *See id.* ¶ 2.

Between 1999 and 2007, Trejo was convicted of several crimes. *See id.* ¶ 9. On December 10, 1999, he was convicted of driving under the influence. *Id.* On April 22, 2002,

Trejo was convicted of a sex offense against a minor and possession of a controlled substance. *Id.* Approximately three months later, he was convicted of conspiracy to commit assault. *Id.* And on April 9, 2007, Trejo was convicted of misprision of a felony. *Id.*

On January 4, 2006, Trejo was arrested by Immigration and Customs Enforcement ("ICE"). *Id.* ¶ 2. On December 21, 2007, Trejo was issued a Final Administrative Removal Order. *Id.* ¶ 3. And on February 27, 2008, he was removed from the United States back to El Salvador. *Id.* ¶ 4.

**B.    Second Arrival in the United States and 8 U.S.C. § 1326 Conviction**

On July 12, 2017, Trejo was encountered by ICE officers in the interior of the United States, having re-entered at an unknown date and place without inspection or admission, and was arrested for illegal re-entry under 8 U.S.C. § 1326. *Id.* ¶ 5. On the same day, Trejo was issued a reinstatement of his removal order. *Id.* On December 13, 2017, Trejo pled guilty to the charge of illegal re-entry and was sentenced to eighteen months of incarceration by the United States District Court for the District of Maryland. *Id.*

**C.    2019 Release and CAT Deferral**

On May 1, 2018, Trejo was released from prison after serving his sentence on the illegal re-entry conviction. *Id.* ¶ 6. After expressing a fear of returning to El Salvador, Trejo was placed in withholding-only proceedings in front of an Immigration Judge ("IJ"). *Id.* On either March 29 or April 29, 2019, the IJ granted Trejo DCAT, prohibiting ICE from executing his reinstated final removal order to El Salvador. *See* Pet. ¶ 17; Garcia Decl. ¶¶ 6–7. On May 17, 2019, ICE released Trejo from detention under an Order of Supervision ("OSUP"). Pet. ¶ 18; Garcia Decl. ¶ 8. As required, Trejo reported in person to ICE annually, and, on March 21,

2023, was enrolled in annual kiosk check-ins.  Pet. ¶¶ 18–19; Garcia Decl. ¶ 8.  Trejo continued

to report to ICE annually until he was re-detained.  Pet. ¶ 19; Garcia Decl. ¶ 8.

### D.    2025 Re-Detention

On March 27, 2025, Trejo reported to ICE in Baltimore, Maryland, and was taken into

custody.  Pet. ¶ 20; Garcia Decl. ¶¶ 8, 11.  That same day, ICE issued a Warrant of

Removal/Deportation and a Notice of Intent/Decision to Reinstate a Prior Removal Order.

Garcia Decl. ¶ 11.  Trejo was originally detained in Buffalo, New York, but was transferred to El

Paso Camp East Montana Detention Facility in El Paso, Texas, on September 6, 2025.  *Id.* ¶¶ 11,

17.  Trejo remains detained in El Paso.  Pet. ¶ 21.

### E.    Third-Country Removal Attempts

After Trejo's re-detention, on April 10, 2025, ICE sent a request to the Mexican

consulate, asking whether Mexico would accept Trejo for deportation "as an alternative country

of removal."  Garcia Decl. ¶ 12.  On May 6, 2025, ICE sent similar requests to the Guatemalan

and Ecuadorian Consulates.  *Id.* ¶ 13.  In August, approximately three months after sending its

requests and not receiving diplomatic assurances from Mexico, Guatemala, or Ecuador, ICE "re-

evaluated possible removal options of Trejo to a third country."  *Id.* ¶¶ 15–16.  On August 22,

2025, ICE again "made communication efforts for possible removal to Mexico."  *Id.* ¶ 16.  ICE's

request to Mexico for acceptance of Trejo "remains pending."  *Id.*  It appears that the requests

remain pending with Guatemala and Ecuador as well.  *See id.* ¶¶ 12–16.

### F.    ICE's Post Custody Reviews

On June 27, 2025, ICE conducted a ninety-day post-custody review ("POCR") of Trejo.

*Id.* ¶ 14.  In the POCR, ICE determined that Trejo was a flight risk and public safety threat.  *Id.*

On September 23, 2025, ICE was scheduled to conduct a 180-day POCR, "but the decision

regarding his custody status has not yet been made." *Id.* ¶ 18.  However, Respondents state that ICE "has decided in its discretion to continue with detention given [Trejo's] extensive criminal record and ties to the MS-13 gang."[1] *Id.* ¶ 21.

### G.  Procedural History

On September 19, 2025, Trejo filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, seeking an order for his release from ICE custody.  Pet. ¶¶ 5, 7.  Trejo challenges the legality of his detention on constitutional and statutory grounds.  *Id.* ¶¶ 22–31.

In addition to the Petition, the Court has received Respondents' Response, ECF No. 3, together with the Garcia Declaration.  Despite the Court's October 8, 2025, Order, ECF No. 4, setting a reply deadline of October 15, 2025, Trejo did not file a reply or any other materials in support of his Petition.  Because the Court grants in part the Petition, while taking as true the facts as presented by Respondents, it is unnecessary to hold a hearing.  *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II.  DISCUSSION

Trejo seeks a writ of habeas corpus for his immediate release from custody, arguing that his continued detention violates his rights under the Fifth Amendment of the United States Constitution, as well as the Immigration and Nationality Act ("INA") and attendant regulations, and thus the *Accardi* doctrine.  Pet. ¶¶ 22–31.  Respondents argue that Trejo's detention comports with substantive and procedural due process because Trejo is subject to a reinstated

---

[1] Garcia attests that Trejo has been associated with MS-13 "through gang tattoos."  *Id.* ¶ 10.

final removal order and § 1231(a) of the INA allows his detention until there is no significant likelihood of removal in the reasonably foreseeable future.  Resp. 3–5.

A.    **Jurisdiction**

Before considering the merits of Trejo's Petition, the Court must first determine whether it has subject matter jurisdiction.  *See Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 344 (5th Cir. 2021) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)) ("Courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'").  Although several sections of the INA curtail the jurisdiction of federal district courts in immigrations courts, this Court has previously held that none of these jurisdiction stripping provisions bar it from hearing a habeas petitioner's challenge to their detention, as opposed to their deportability.  *See Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3–6 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *3–6 (W.D. Tex. Sept. 22, 2025).  This is also true for a habeas petitioner's challenge to their post-removal period detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Here, Trejo challenges his re-detention after he was granted DCAT and released pursuant to an Order of Supervision nearly six and a half years ago.  He does not seek to challenge his reinstated final order of removal or his removability to a country other than El Salvador.  He simply challenges his re-detention while the Government attempts to lay the diplomatic groundwork for such a removal.  Accordingly, the Court has jurisdiction to hear Trejo's Petition. *See id.*; *Santiago*, 2025 WL 2792588, at *3–6; *Lopez-Arevelo*, 2025 WL 2691828, at *3–6.

### B.    Petition for Writ of Habeas Corpus

Trejo argues that his detention is unlawful on two grounds.  First, that he is detained in violation of § 1231(a) of the INA and  8 C.F.R. §§ 241.4(l)(1–2), 241.13(h)(4)(i)(3).  He argues that under the Supreme Court's interpretation of § 1231(a), detention is only authorized for "'a period reasonably necessary to bring about [his] removal from the United States.'"  Pet. ¶ 23 (quoting *Zadvydas*, 533 U.S. at 689).  And because Trejo cannot be deported to El Salvador, the only country of which he is a citizen, and ICE has not identified an alternative country for removal, Trejo will not be removed in the reasonably foreseeable future.  *Id.* ¶ 24.  Thus, Trejo argues, his detention violates § 1231(a).  *Id.* ¶ 27.  In addition, Trejo claims that his detention is unlawful under the *Accardi* doctrine because ICE failed to comply with regulations which only allow the Executive Associate Commissioner to revoke an OSUP and require ICE to provide him with notice of the reason for the revocation of his OSUP and an opportunity to respond in an informal interview.  Pet. ¶¶ 27–28 (citing 8 C.F.R. §§ 241.4(l)(1–2), 241.13(h)(4)(i)(3)).

Second, Trejo argues that his detention is violative of the due process clause of the Fifth Amendment.  *Id.* ¶¶ 30–31.  His re-detention, after being released pursuant to an OSUP in 2019, without "any showing of changed circumstances" and "pending [an] as-yet uninitiated third country removal," Trejo argues, is "entirely arbitrary" and "violates his due process rights."  *Id.* ¶ 31.

Although Trejo frames his *Zadvydas* claim as a statutory challenge under § 1231(a), whether his detention, at this point, "bear[s] [a] reasonable relation to the purpose for which [he is] committed" is a question of due process under the Fifth Amendment.  *See Zadvydas*, 533 U.S. 678, 690.  Similarly, due process is the proper vehicle to challenge Respondents' failures to follow their own regulations in violation of the *Accardi* doctrine.  *See Ayala Chapa v. Bondi*, 132

F.4th 796, 799 & n.3 (5th Cir. 2025); *Francois v. Garland*, 120 F.4th 459, 464–65 (5th Cir.

2024).  Accordingly, the Court considers § 1231(a) and 8 C.F.R. §§ 241.4(l)(1–2) and

241.13(h)(4)(i)(3) only to the extent they bear on Trejo's due process claims.  Insofar as Trejo

brings a stand-alone challenge under the INA and attendant regulations, the Court does not reach

that challenge and instead proceeds to Trejo's constitutional claims.

### 1.    Prolonged Detention Under *Zadvydas*

Respondents argue that Trejo's detention comports with substantive and procedural due

process.  Resp. 3–7.  They contend that § 1231(a) of the INA allows his detention until there is

no significant likelihood of removal in the reasonably foreseeable future.  *Id.* at 3–5.

Once a noncitizen is ordered removed from the United States, the INA requires that

removal generally occur within ninety days.  8 U.S.C. § 1231(a)(1)(A).  That removal period

begins on the latest of three dates: (1) when the removal order becomes final, (2) when there is a

final order in a stay of removal, or (3) when the noncitizen is released from non-immigration

custody, such as the completion of a criminal sentence.  *See id.* § 1231(a)(1)(B).  During this

removal period, "the Attorney General shall detain the alien."  *Id.* § 1231(a)(2)(A).

The removal period may be extended in at least three circumstances.  Relevant here, a

noncitizen may be detained beyond the removal period if he is "(1) inadmissible, (2) removable

as a result of violations of status requirements, entry conditions, or the criminal law, or for

national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply

with the removal order."  *Johnson v. Guzman Chaves*, 594 U.S. 523, 528–29 (2021) (citing 8

U.S.C. § 1231(a)(6)).  If any of these grounds apply, the statute imposes no limit on the time a

person may be detained.

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem" the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. 689–90. This period is presumptively six months. *Id.* at 701. However, this "does not mean that every alien not removed must be released after six months." *Id.* Rather, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, after the presumptively reasonable period, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Conclusory statements suggesting that removal is not likely in the reasonably foreseeable future are insufficient to make this showing. *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006). Once the noncitizen meets this initial burden of proof, the government must furnish "evidence sufficient to rebut that showing" or release the noncitizen. *Zadvydas*, 533 U.S. at 701; *see also Andrade*, 459 F.3d at 543. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

### a.    Trejo's Initial Burden

Respondents do not contest that Trejo has now been in custody for approximately seven months, one month beyond the presumptively reasonable six-month period. *See generally* Resp. Instead, Respondents argue that Trejo is not entitled to relief because he fails to show good reason to believe that his removal to a third country is unlikely in the reasonably foreseeable future. *Id.* at 3–4. Respondents argue that Trejo's allegation that ICE "is not actually attempting

to remove him anywhere reasonably foreseeable" is conclusory and insufficient to meet his

burden under *Zadvydas*. *Id.* at 5.

Trejo alleges that he has been granted DCAT and cannot be removed to El Salvador, the

only country of which he is a citizen. Pet. ¶ 24. He also alleges that "ICE has affirmatively

informed [his] counsel that it has not identified a country to which it intends to attempt to deport

[him.]" *Id.* These straightforward factual allegations are not conclusory. Trejo has identified a

"'particular individual barrier[] to his repatriation' to his country of origin"—his grant of DCAT,

which prevents his removal to El Salvador. *See Idowu v. Ridge*, No. 03-cv-1293, 2003 WL

21805198, at *4 (N.D. Tex. Aug. 4, 2003) (quoting *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359,

1366 (N.D. Ga. 2002)); *cf. Andrade*, 459 F.3d at 541, 543 (finding petitioner's allegations

conclusory where petitioner was a citizen of the country to which his removal was sought and

there were no barriers to his repatriation); *Thanh v. Johnson*, No. 3:15-cv-403-PRM, 2016 WL

5171779, at *1, 4 (W.D. Tex. Mar. 11, 2016) (same). Trejo has also demonstrated that he is not

a citizen of any other country, and that ICE has not identified a third country that will accept

him. Accordingly, the Court finds that Trejo has met his initial burden under *Zadvydas*. *See*

*Misirbekov v. Venegas*, No. 25-cv-168, 2025 WL 2450991, at *1–2 (S.D. Tex. Aug. 15, 2025)

(finding good reason to believe there was no significant likelihood of removal in the foreseeable

future where the petitioner was granted CAT withholding from Kyrgyzstan and had no

citizenship or ties to any other country).

### b.    Respondents' Burden

The burden thus shifts to Respondents, *Zadvydas,* 533 U.S. at 701, who argue that

removal is likely in the foreseeable future because "ICE has contacted multiple countries seeking

acceptance of Petitioner" and "[w]hile some requests have been refused, the requests to Mexico, Guatemala, and Ecuador remain pending."  Resp. 5.

Other district courts in this Circuit have held that the Government's burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future is not met by a pending request for travel documents, alone.  *See, e.g.*, *Johnson v. Young*, No. 12-cv-2339, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013) (finding argument that Jamaican consulate had not yet refused to issue travel documents insufficient to meet the government's burden), *report and recommendation adopted*, 2013 WL 1571272 (Apr. 12, 2013); *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 06-cv-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (finding no significant likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document and Trinidad had not yet refused the request); *cf. Yaro v. Mukasey*, No. 5:08-cv-593-XR, 2008 WL 4816657, at *3 (W.D. Tex. Oct. 30, 2008) (finding petitioner's removal likely in the foreseeable future where Malian embassy had not refused to issue travel documents or failed to respond to ICE, but instead acknowledged receipt of application and provided general timeline for investigation and decision).  The Court finds these decisions persuasive—Respondents cannot carry their burden with the outstanding requests, alone.

Indeed, the longer a request for travel documents remains pending without any action by the foreign government, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *See Zadvydas,* 533 U.S. at 701; *see also Young*, 2013 WL 1571938, at *1–2 (finding removal not reasonably foreseeable where travel document request was pending for nine months); *Fermine*, 2007 WL 2284606, at *4 (same, fifteen months).

Here, ICE's requests to Guatemala and Ecuador to accept Trejo have been pending for over five months with no indication that they will be approved. *See* Garcia Decl. ¶ 13. The request to Mexico has been pending for over six months. *Id.* ¶ 12. Respondents do not allege or provide any evidence that any of the three countries even acknowledged receipt of ICE's request, much less that they asked for supplemental information or documentation, or provided any kind of timeline for their decision. Respondents admit that in August, after not receiving diplomatic assurances from any of the three countries in response to its then three-month pending requests to Guatemala and Ecuador and its four-month pending request to Mexico, ICE "re-evaluated possible removal options of Trejo to a third country." *Id.* ¶¶ 15–16. Yet, it is these same three pending requests that Respondents now argue demonstrate that Trejo's removal is likely to occur in the reasonably foreseeable future. *See* Resp. 3. It has now been another two months since the decision to "re-evaluate" and apart from a follow up request to Mexico, it appears that no other steps have been taken to attempt to secure a country for Trejo's removal. *See id.*

To be sure, the fact that Trejo's length of detention is just over the presumptively reasonable period and the requests to Mexico, Ecuador, and Guatemala have been pending for just under that period weighs in Respondents' favor. *See Zadvydas,* 533 U.S. at 701. Even so, Respondents have not shown that Trejo's removal is likely to occur in the reasonably foreseeable future. Respondents acknowledge that Trejo's removal is "depend[ent] on acceptance from a third country." Garcia Decl. ¶ 20. And as discussed above, ICE itself re-evaluated possible removal options for Trejo in August after it did not receive diplomatic assurances from Mexico, Guatemala, or Ecuador in response to its requests. ICE has still not received any diplomatic assurances and has not provided any evidence that demonstrates why removal is any more likely than it was in August.

Taking a step back, Respondents have neither shown nor even alleged that Mexico, Guatemala, or Ecuador has ever accepted deportation of a Salvadoran national from the United States. *See generally* Resp.; Garcia Decl. Accordingly, the mere fact that ICE's third-country requests remain pending is insufficient to show that Trejo's removal is likely to occur in the reasonably foreseeable future. *See Young*, 2013 WL 1571938, at *2. Respondents have thus failed to meet their burden, and Trejo's continued detention violates his due process rights. *See Zadvydas*, 533 U.S. at 690, 701.

## 2.    Re-Detention Without Individualized Determination

Again, the Court acknowledges that Trejo has only been detained one month beyond the presumptively reasonable period, making his detention less prolonged than most successful *Zadvydas* petitioners. However, Trejo's liberty interest is stronger than the usual *Zadvydas* petitioner, who is detained continuously from the time of their final removal order. After his removal order was reinstated, Trejo was released pursuant to an OSUP and lived at liberty in the United States for nearly six and a half years. *See* Pet. ¶ 18; Garcia Decl. ¶ 8. Thus, in the alternative, the Court finds that Trejo is entitled to additional procedural protections by virtue of the liberty interest he obtained through his release.

Respondents appear to argue that any procedural due process claim other than a *Zadvydas* claim is foreclosed by *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). Resp. 6. They also argue that, even if Trejo can bring a distinct claim, he has been provided with the constitutional minima of due process because ICE has conducted his ninety-day POCR and will continue to conduct periodic reviews of his custody at the 270-day and one-year marks until his removal order is executed.[2] Resp. 5–7.

---

[2] Following *Zadvydas*, the Department of Homeland Security ("DHS") implemented regulations requiring officials to conduct a POCR before the ninety-day removal period expires if the noncitizen's removal

As to Respondents' first argument, in *Arteaga-Martinez*, the Supreme Court held that, as a matter of statutory interpretation, § 1231(a) does not require a bond hearing before an IJ after a noncitizen has been detained for six months. 596 U.S. at 580–81. Respondents note that the Fifth Circuit "has not provided guidance to lower courts, post-*Arteaga Martinez*, on the appropriate standard for reviewing a procedural due process claim alleged by an alien detained under § 1231" and point to a Fourth Circuit decision applying the *Zadvydas* framework. Resp. 6. In *Castaneda v. Perry*, the Fourth Circuit concluded that the *Zadvydas* framework "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds." 95 F.4th 750, 760 (4th Cir. 2024).

The Court finds *Castaneda* unpersuasive for two reasons. First, the *Arteaga-Martinez* Court specifically declined to review the habeas petitioner's constitutional claims and "le[ft] them for the lower courts to consider in the first instance." *Arteaga-Martinez*, 596 U.S. at 584 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018)). The Court also separately declined to review the petitioner's "alternative theory that he is presumptively entitled to release under *Zadvydas*," thus indicating that the "constitutional claims" left open were distinct from his *Zadvydas* claim and to be considered in their own right. *See id.* at 584. In the § 1225(b) mandatory detention context, this Court has previously held that the *Jennings* Court preserved the viability of as-applied constitutional challenges by expressly declining to rule on them. *See Lopez-Arevelo*, 2025 WL 2691828 at *8; *Santiago*, 2025 WL 2792588 at *7. The same is true here, in the context of § 1231(a) detention. *Cf. Cabrera Galdamez v. Mayorkas*, No. 22-cv-9847,

---

cannot be accomplished within that time frame. 8 C.F.R. § 241.4(h)(1), (k)(1)(i). During the POCR, officials review the detainee's records and other evidence and consider a long list of factors geared toward determining (1) flight risk, (2) danger to the community, (3) ability to adjust to life in the community, and (4) likelihood of obtaining travel documents. *Id.* at § 241.4(e)–(g). After the initial POCR, if the noncitizen is not released or removed, a second review must be done about three months later, with successive reviews done at least annually thereafter. *Id.* at § 241.4(k)(2)(ii), (iii), (v).

2023 WL 1777310, at *4 (S.D.N.Y. Feb. 6, 2023) (finding as-applied constitutional challenge available to § 1231(a) habeas petitioner for same reasons available to § 1226(a) petitioners).

Second, the petitioners in *Arteaga-Martinez* and *Castaneda* were typical *Zadvydas* petitioners. Neither had been released pursuant to an OSUP after the reinstatement of his final removal order. *See Arteaga-Martinez*, 596 U.S. at 576–77; *Castaneda*, 95 F.4th at 753–54. Thus, neither had a strong argument that due process prevented their detention, unless that detention became unreasonably prolonged. *See also Linares v. Collins*, No. 1:25-cv-584-RP, 2025 WL 2726549, at *1, 4–5 (W.D. Tex. Aug. 12, 2025) (applying only *Zadvydas* framework and declining to apply *Mathews v. Eldridge* framework to § 1231(a) detainee's procedural due process claim where he had been detained since reinstatement of his final removal order), *report and recommendation adopted*, 2025 WL 2726067 (Sept. 24, 2025). Many courts, including this one, have found that ICE's decision to release a noncitizen confers a significant liberty interest that cannot be revoked without an individualized determination by a neutral adjudicator. *See, e.g.*, *Lopez-Arevelo*, 2025 WL 2691828 at *10–11; *Pinchi v. Noem*, --- F. Supp. 3d ----, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025). Even in this specific context, at least two district courts have found that a §1231(a) detainee who has been released and then re-detained has a protectable liberty interest and a viable procedural due process claim distinct from a *Zadvydas* claim. *See Garcia v. Andrews*, No. 25-cv-1884, 2025 WL 1927596, at *3–5 (E.D. Cal. July 14, 2025); *Perez v. Berg*, No. 24-cv-3251, 2025 WL 566884, at *1, 5–7 (D. Minn. Jan. 6, 2025), *report and recommendation adopted*, 2025 WL 566321 (Feb. 20, 2025). Accordingly, the Court does not find that Trejo's procedural due process claim is foreclosed.

As to the merits of Trejo's claim and Respondents' second argument, "[t]o determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test

14

set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

### a.    Private Interest

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests.'" *Martinez v. Noem*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents do not engage with the *Mathews* factors, but their position appears to be that Trejo does not acquire a liberty interest until his detention becomes unreasonably prolonged because he is subject to a reinstated final removal order and thus detention under §1231(a) without a statutory right to a bond hearing. Resp. 5–7. Yet Respondents fail to contend with the liberty interest created by the fact that after Trejo was subject to a reinstated final order of removal, he was released pursuant to an OSUP and has been at liberty for nearly six and a half years. *See Garcia*, 2025 WL 1927596, at *3.

This position finds support in the longstanding principle in the criminal context that due process requires a pre-deprivation hearing before the revocation of parole. *See Espinoza v. Kaiser*, No. 25-cv-1101, 2025 WL 2581185, at *9 (E.D. Cal. Sept. 5, 2025) (citing *Young v.*

*Harper*, 520 U.S. 143, 147–49 (1997)).  "The parolee has relied on at least an implicit promise

that parole will be revoked only if he fails to live up to the parole conditions." *Id.* (quoting

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  Parolees thus have a protected liberty interest

in their "continued liberty." *Id.* (citation omitted).  As discussed, many district courts, including

this one, have extended this reasoning to the immigration context when analyzing § 1225(b)

detainee challenges to mandatory detention and held that once released from immigration

custody, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond."

*Lopez-Arevelo*, 2025 WL 2691828 at *10–11 (quoting *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL

1676854, at *2 (N.D. Cal. June 14, 2025)); *accord M.S.L.*, 2025 WL 2430267, at *8 ("Just as

people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen

released from immigration detention] have a liberty interest in remaining out of custody on

bond.") (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)); *Rosado v.

Figueroa*, No. 25-cv-2157, 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025) (same); *Pinchi*,

2025 WL 2084921, at *3 (same).

      Because he spent over six years at liberty in the United States pursuant to an OSUP,

Trejo possesses a cognizable interest in his continued freedom from detention.

**b.**      **Risk of Erroneous Deprivation**

      Under the second *Mathews* factor, the Court considers "whether the challenged procedure

creates a risk of erroneous deprivation of individuals' private rights and the degree to which

alternative procedures could ameliorate these risks."  *Martinez v. Noem*, 2025 WL 2598379, at

*3 (quoting *Gunaydin v. Trump*, No. 25-cv-1151, 2025 WL 1459154, at *8 (D. Minn. May 21,

2025)).  Respondents argue that the POCR process affords Trejo sufficient due process.  Resp.

6–7.  The POCR process consists of a custody review by ICE, not a neutral arbiter, and does not

allow for an appeal.  *See* 8 C.F.R. §§ 241.4(c–d).  In Trejo's case, ICE determined that Trejo was a flight and safety risk in his ninety-day POCR.  Garcia Decl. ¶ 14.  Although Respondents argue that Trejo will continue to receive due process through ICE's continued review of his detention at the 180-day, 270-day, and one-year marks, Resp. 6, the record also indicates that ICE "has decided in its discretion to continue with detention given [Trejo's] extensive criminal record and ties to the MS-13 gang," Garcia Decl. ¶ 21.

But even if it would not be entirely futile for Trejo to continue to seek release through the POCR process, several aspects of the POCR process raise due process concerns.  Foremost, the decision is made by ICE, not a neutral arbiter.  *See Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) ("And, of course, an impartial decision maker is essential."); *Giles v. Shaw Sch. Dist.*, 655 F. App'x 998, 1004 (5th Cir. 2016) (citation omitted) ("The basic requirement of constitutional [procedural] due process is a fair and impartial tribunal, whether at the hands of a court, an administrative agency or a government hearing officer."); *Rosario v. Searls*, No. 23-cv-6424, 2023 WL 7326047, at *3 (W.D.N.Y. Nov. 7, 2023) (finding custody determination by ICE to be insufficient due process because decision was not made by a neutral decisionmaker); *Kabba v. Barr*, 403 F. Supp. 3d 180, 189 (W.D.N.Y. 2019) (same); *cf. Flores v. Rosen*, 984 F.3d 720, 734 (9th Cir. 2020) (holding bond hearing before a Department of Health and Human Services adjudicator instead of an immigration judge sufficient because due process only requires custody determinations to be "reviewed by an adjudicator 'independent' from the entity making the determinations.").  Although the POCR process was implemented by DHS after *Zadvydas* to address due process concerns of indefinite detention of § 1231(a) detainees, the *Zadvydas* Court, in determining that the statute raised such concerns, took issue with that fact that "the sole procedural protections available to the alien are found in administrative proceedings, where the

alien bears the burden of proving he is not dangerous, without . . . significant later judicial review." *Zadvydas*, 533 U.S. at 692. The POCR process does not address these facets of *Zadvydas*.

Second, there is no right to appeal. *See, e.g.*, *Wilson v. N. E. Indep. Sch. Dist.*, No. 5:14-cv-140-RP, 2015 WL 13716013, at *7 (W.D. Tex. Sept. 30, 2015) (finding high risk of erroneous deprivation where school district officials had broad discretion to ban members of the public from school board meetings and there was no process to appeal such bans). Taken together, these procedural deficiencies in the POCR process create a high risk that Trejo will continue to be erroneously deprived of his liberty.[3]

That is especially true where, as here, there has been no material change in circumstances since Trejo was last released from custody. Respondents' position is that Trejo was re-detained in order to effect his removal to a third country and remains detained due to his criminal history and ties to MS-13. Resp. 2; Garcia Decl. ¶ 21. However, his criminal history and alleged ties to MS-13 pre-date his 2019 release from detention. In the six and a half years that he spent at liberty under ICE supervision from 2019 to 2025, there is nothing in the record to indicate that he committed a crime or endangered anyone. Absent some change in Trejo's personal circumstances or the ability to remove him to a third country other than El Salvador, the decision to re-detain him after many years at liberty gives rise to an elevated concern that he has been re-detained without a valid reason. *See, e.g.*, *Valdez v. Joyce*, No. 25-cv-4627, 2025 WL 1707737, at *3–4 (S.D.N.Y. June 18, 2025).

---

[3] This conclusion is further supported by Trejo's allegations that ICE failed to follow its own regulations in revoking his release. Pet. ¶¶ 27–28. Some courts have found such failures to be, in and of themselves, violations of due process mandating habeas relief. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 158–170 (W.D.N.Y. 2025); *M.S.L.*, 2025 WL 2430267 at *8–12.

In terms of available alternatives and their probable benefits, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Because such a proceeding would give Trejo the opportunity to be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond, it would greatly reduce the risk of an erroneous deprivation of his liberty. Therefore, the second *Mathews* factor also supports Trejo's claim that he has been denied procedural due process.

### c.    Government's Interest

On the final factor, Respondents state that Trejo was re-detained to "attempt removal efforts to third countries." Resp. 2. Of course, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. *See Zadvydas*, 533 U.S. at 690-91.

But the decision to release Trejo pursuant to an OSUP over six years ago, in and of itself, "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018). In addition, there is no evidence in the record indicating that Trejo would be a flight risk—he has checked in with ICE annually since he was released in 2019. Nor is there anything in the record to indicate that he has committed any crimes or endangered anyone during his six and a half years at liberty in the United States. In any event, if such concerns exist, they would be squarely addressed if the Court were to grant the petition and order a bond hearing. *See Martinez v. Noem*, 2025 WL 2598379, at *4.

19

It is conceivable that the Government may assert an interest in avoiding "the incremental cost resulting from the increased number of hearings" if it must provide bond determinations to people like Trejo. *Infinity Healthcare Servs., Inc. v. Azar*, 349 F. Supp. 3d 587, 601 (S.D. Tex. 2018) (quoting *Mathews*, 424 U.S. at 347). But such costs cannot be terribly burdensome, given that the Government routinely conducts bond hearings. *See Singh v. Andrews*, No. 25-cv-801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (quoting *Doe v. Becerra*, --- F. Supp. 3d ----, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). Therefore, this factor also weighs in Trejo's favor.

Because all three *Mathews* factors support Trejo's position, the Court finds that detaining him without an individualized assessment of his flight risk and dangerousness by an IJ deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. *See, Lopez-Arevelo*, 2025 WL 2691828, at *13; *see also Garcia*, 2025 WL 1927596, at *5–6.

###    C.    Scope of Relief

As to the appropriate remedy, Petitioner requests that he be immediately released from custody. Pet. 9. For their part, Respondents argue that the appropriate remedy, if any, is "substitute process." Resp. 6.

The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *See, e.g.*, *Khan v. Gonzales*, 481 F. Supp. 2d 638, 643 (W.D. Tex. 2006) (granting habeas petitioner's release subject to an order of supervision); *see also Arteaga-Martinez*, 596 U.S. at 584 (declining to review *Zadvydas* claim because it was not properly before the Court and would alter the scope of the judgment below which granted the habeas petitioner a bond hearing, not release). However, for a procedural due process violation, a

20

majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ. *Lopez-Arevelo*, 2025 WL 2691828, at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). This is so "[b]ecause the alien's potential loss of liberty is so severe . . . he should not have to share the risk of error equally." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (citing *Guerrero-Sanchez v. Warden York Cnty.. Prison*, 905 F.3d 208, 224 & n.12 (3d Cir. 2018)). Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner.[4] *See, e.g.*, *Velasquez Salazar*, 2025 WL 2676729, at *9 (collecting cases).

Here, as noted above, Trejo's detention is just one-month over the presumptively reasonable period of detention under *Zadvydas*. And while the Court finds that Respondents failed to meet their burden to show that Trejo's removal is significantly likely to occur in the reasonably foreseeable future, it also finds, in the alternative, that Trejo's re-detention after his release without a bond hearing violates his due process rights. Accordingly, and because the Court has flexibility in fashioning a habeas remedy, the Court finds that a bond hearing is appropriate. *See Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *Siraj v. United States Sent'g*

---

[4] The Court takes judicial notice that at least one IJ in the El Paso area has apparently disclaimed jurisdiction to adjudicate bond hearings on the merits even when ordered to do so by a United States District Court. *See* Status Report, *Souza Vieira v. De-Anda Ybarra*, No. 3:25-cv-432-DB (W.D. Tex. Oct. 21, 2025), ECF No. 17. Again, the Court affords agency decisionmakers the opportunity to determine whether Trejo is a danger or flight risk. But if they decline that opportunity, then Trejo must be promptly released.

*Comm'n*, No. 19-cv-3375, 2021 WL 1061701, at 6 (D.D.C. Mar. 18, 2021) ("Federal courts have

the power and discretion under federal habeas to fashion a wide-range of appropriate relief.")

(citing *Peyton v. Rowe*, 391 U.S. 54, 66–67 (1968)).

## III.    CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is

**GRANTED IN PART**.  The Court **ORDERS** that, **on or before November 3, 2025**,

Respondents shall either: (1) provide Trejo with a bond hearing before an IJ, at which the

Government shall bear the burden of justifying by clear and convincing evidence of

dangerousness or flight risk, Trejo's continued detention; or (2) release Trejo from custody,

under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before November 3, 2025**, Respondents shall

**FILE** written notice informing the Court whether Trejo has been released from custody.  If Trejo

has not been released from custody, Respondents shall inform the Court whether a bond hearing

was held in accordance with the preceding paragraph.  Respondents shall further inform the

Court, in detail, of the reasons for the IJ's decision.

**There will be no extensions of the November 3 deadlines**.

**SO ORDERED**.

**SIGNED this 24th day of October, 2025.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE